UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO McPHEARSON, | No. 2:09-cv-1889 DAD P |
| Petitioner, | |
| v. | |
| MICHAEL BENOV,[1] | ORDER |
| Respondent. | |

Petitioner is a federal prisoner proceeding through appointed counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Therein, petitioner claims that the United States government has violated his Fifth Amendment right to due process by returning him to custody, almost ten years after he was mistakenly released from the Los Angeles County Jail, in order to serve the remainder of a sentence imposed as a result of his conviction on federal charges. Petitioner also claims that he is entitled to the award of credit against his sentence for all of the time he was mistakenly at liberty in addition to good time.

/////

---

[1] Previously named as the respondent in this action was Richard B. Ives, the warden at FCI Herlong. The court now substitutes in as the respondent the Warden of the Taft Correctional Institution, where petitioner is presently incarcerated. See Rumsfeld v. Padilla, 542 U.S. 435 (2004) (in habeas challenges to present physical confinement, the proper respondent is the warden of the facility where the prisoner is being held).

1

For the reasons set forth below, the court finds that petitioner's request for the award of credit for time served while he was at liberty plus good time credits has been rendered moot. In addition, upon careful consideration of the record and the applicable law, the court concludes that petitioner is not entitled to habeas relief with respect to his re-incarceration.

**I. Background[2]**

Pursuant to a writ of habeas corpus ad prosequendum issued on January 26, 1999, petitioner was transported in custody from Los Angeles County to face federal charges in the United States District Court for the Northern District of Texas. (ECF No. 72 at 7.)[3] Following a jury trial, petitioner was convicted in the Northern District of Texas of conspiracy with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. (ECF No. 15-1 at 11.) As a result of his conviction, on July 9, 1999, petitioner was sentenced to serve 327 months in the custody of the Federal Bureau of Prisons and was remanded into custody. (Id. at 16.)[4]

Following his sentencing in federal court, on August 17, 1999, pursuant to a writ of habeas corpus ad prosequendum, the U.S. Marshal transferred petitioner to the custody of the Los Angeles County Sheriff's Department to face state charges that had been filed against him in Los Angeles County. (ECF No. 57 at 2.) No evidence has been presented in this habeas action that the U.S. Marshal placed a detainer on petitioner when he was transported to the Los Angeles County Jail. (ECF No. 90 at 1.) Thereafter, the Los Angeles County District Attorney's Office declined to proceed on those state charges against petitioner and he was released from custody by local authorities in Los Angeles shortly after being transported there from Texas rather than being returned to federal custody to continue serving his sentence. (Id.) In terms of representations

---

[2] The parties have stipulated to the facts material to the resolution of the pending petition. (ECF No. 90.) There appears to be no dispute between the parties as to any relevant fact.

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[4] On November 30, 2010, petitioner's sentence of imprisonment was reduced by the sentencing court to 262 months in response to a motion made pursuant to 18 U.S.C. § 3582(c)(2) and by which petitioner sought the benefit of amendments made to the U.S. Sentencing Guidelines with respect to sentencing in crack cocaine cases. (ECF No. 32 at 2, 11.)

allegedly made to him when he was set free, petitioner represents to this court only that upon his release he "was informed by officials at the Los Angeles County Jail that there was no hold or detainer against petitioner." (ECF No. 57 at 6.)

Following his release from the Los Angeles County Jail, petitioner returned to his former residence in Canoga Park, California. (ECF No. 36 at 2.) Thereafter, petitioner married, obtained steady employment, paid income taxes, and filed tax returns for over nine years. He also used his own true name, date of birth and Social Security number when obtaining a marriage license, recording birth certificates for his three children, applying for employment, and paying his taxes. (Id. at 2-3.)

In July of 2007, the U.S. Marshal in Abilene, Texas learned of petitioner's mistaken 1999 release from the Los Angeles County Jail. (ECF No. 90 at 1.) The United States District Court for the Northern District of Texas issued a warrant for petitioner's arrest on July 27, 2007. (Id.) On or about August 6, 2007, the U.S. Marshal for the Northern District of Texas sent a collateral lead to the U.S. Marshal for the Central District of California seeking assistance in apprehending petitioner. (Id. at 2.) Although petitioner's Social Security number was then associated with three addresses within the Los Angeles area, there is no evidence that the U.S. Marshal for the Central District of California took any steps to locate petitioner after receiving the collateral lead from federal officials in Texas. (Id.) Petitioner was finally arrested by a Los Angeles County Sheriff's Deputy on or about January 6, 2009, after a routine traffic stop. (Id.) Petitioner's arrest was not the product of any affirmative investigation by federal authorities into his whereabouts. (Id.) In 2009, following his arrest, petitioner was re-incarcerated to serve the remainder of his federal sentence that had been imposed on July 9, 1999.

This federal habeas action was filed July 10, 2009. The case was temporarily stayed on two occasions pending proceedings in the United States Court of Appeals for the Fifth Circuit on petitioner's motion, brought pursuant to 18 U.S.C. § 3582(c), to reduce his sentence and his exhaustion of administrative remedies regarding to his claim for time credits in connection with

/////

/////

his federal sentence while at liberty.[5] Petitioner is currently serving his federal sentence at the Taft Correctional Institution. During a status conference on June 28, 2013, the court was advised by counsel that petitioner has now been awarded presentence credits as well as additional time credit against his sentence for all of the time he was at liberty and related good time credits. In light of the award of those credits, petitioner's projected release date from federal custody is now December 20, 2017.

## II. Analysis

### A. Standard of Review Applicable to Claims Brought Pursuant to 28 U.S.C. § 2241

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). A federal prisoner who challenges the validity or constitutionality of his underlying conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006). On the other hand, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence, as petitioner does here, must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000); see also Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008); Stephens, 464 F.3d at 897.

### B. Petitioner's Due Process Claim

#### 1. Waiver and Estoppel Theories

Petitioner claims that the United States government effectively waived, or is estopped from asserting, any right to execute his federal prison sentence as a result of its failure to re-incarcerate him for nearly ten years after his mistaken release from custody by local authorities in Los Angeles. Petitioner argues that requiring him to serve his federal sentence now would violate his Fifth Amendment right to due process. (ECF No. 1 at 3, 6; ECF No. 72 at 10-16.)

When presented with due process claims involving a delay in the execution of a federal sentence, such as the claim now before this court, the United States Court of Appeals for the

---

[5] Status conferences were held in this court on January 18, 2013, June 28, 2013, November 18, 2013, and December 9, 2013.

Ninth Circuit has examined the government's conduct under theories of both waiver and estoppel. In the following passage, that court explained the application, and to some extent the underpinnings, of both theories:

> At common law, "where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the imprisonment being endured, the sentence remains valid and subsisting in its entirety." United States v. Vann, 207 F. Supp. 108, 113 (E.D.N.Y.1962). Thus, under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed.
>
> More recent cases, however, examine the totality of the circumstances surrounding the delay in execution of sentence. See Johnson v. Williford, 682 F.2d 868, 873 (9th Cir. 1982) (citing United States v. Merritt, 478 F. Supp. 804, 807 (D. D.C.1979)). If from the totality of the circumstances due process is violated, a convicted person is not required to serve the entire sentence imposed. See id. Traditionally, in cases involving delay in execution of sentence, federal courts have examined an alleged due process violation under the theories of waiver or estoppel. Id.; Green v. Christiansen, 732 F.2d 1397, 1399 (9th Cir.1984).
>
> Under the waiver theory, this court in Johnson, 682 F.2d at 873, adopted the totality of circumstances test espoused in Merritt:
>
>> A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted - the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his incarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.' "
>
> Merritt, 478 F. Supp. at 807.
>
> * * *
>
> Courts have looked with favor on a defendant's attempt to bring a mistake to the government's attention. See Shelton v. Ciccone, 578 F.2d 1241, 1245 (8th Cir. 1978) (petitioner's mother calls authorities); White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930) (prisoner brings mistaken release to warden's attention, but is "brushed aside"); Merritt, 478 F. Supp. at 807 (defendant contacts U.S. Marshal's office several times).
>
> In Green, this court held that the government waives the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally

5

inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." 732 F.2d at 1399. See also Johnson, 682 F.2d at 872-73 (due process violated when prisoner was incarcerated after being released on parole following at least eight separate administrative reviews); Shields v. Beto, 370 F.2d 1003, 1004 (5th Cir.1967) (due process violation to delay execution of sentence twenty-eight years).

\* \* \*

Under the estoppel theory, this court has employed a four-part test which requires that:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

Green, 732 F.2d at 1399.

United States v. Martinez, 837 F.2d 861, 864-65 (9th Cir. 1988).

A review of the decisions of the Ninth Circuit in cases involving the re-incarceration of prisoners who have been mistakenly released or allowed to remain at liberty is illuminating with respect to the application of these principles. In Johnson v. Williford, 682 F.2d 868 (9th Cir. 1982), the petitioner had been convicted and sentenced under a federal statute requiring a minimum ten year term of imprisonment without the possibility of parole. 682 F.2d at 869. Following several sentencing computation reviews by the Bureau of Prisons and a hearing before the U.S. Parole Commission, petitioner was released on parole with no release audit apparently being performed and without discovery of the fact that he was in fact statutorily ineligible for parole. Id. at 870. Petitioner Johnson remained at liberty on parole for fifteen months and during that time successfully reintegrated into the community – living with his wife and two teenage children, operating his own business, reporting regularly to his parole officer and making all of his scheduled court appearances. Id. When his ineligibility for release on parole was discovered by federal authorities, he was arrested and returned to custody. Under these circumstances, the Ninth Circuit held that the government was estopped from returning the petitioner to prison after he had been erroneously released on parole.

While observing that "[i]n general, equitable estoppel is not available as a defense against the government," the court concluded that the government's wrongful conduct in releasing the petitioner threatened "to work a serious injustice," where he had been "reunited with his family" and had left a steady job to start his own business. Id. at 871. However, the "crucial" fact relied upon by the Ninth Circuit in finding a due process violation in the petitioner's case was the government's "active misadvice" to Johnson at eight separate administrative reviews that he was in fact eligible for parole which caused petitioner to hold a legitimate and sincere belief that his release was lawful and not the product of some mistake or error. Id. at 872.

Next, in Green v. Christiansen, the petitioner had been convicted of separate criminal offenses in both federal and California courts and was sentenced to serve those sentences of different lengths concurrently. 732 F.2d at 1398. Although the state sentence was the shorter of the two, the California Department of Corrections (CDCR) put a detainer on petitioner pursuant to which he was taken into state custody to begin the concurrent service of the federal and state sentences. Id. When CDCR inquired of the U.S. Marshal whether they wished to place a federal detainer on petitioner Green, they specifically declined to do so. Id. Thereafter, petitioner Green was released from state custody on parole and successfully completed his state parole term. Id. Two years later, federal authorities discovered that petitioner Green had been released from state custody before completing his federal sentence and immediately caused him to be arrested on an escape warrant. Id. at 1399. He was thereafter incarcerated to serve the remainder of his federal sentence. Id. at 1398-99.

On appeal following the dismissal of his habeas petition, the Ninth Circuit concluded that the failure of the U.S. Marshal to place a detainer on Green did not constitute a waiver of the government's right to recommit him into custody. Id. at 1399. In so holding, the court contrasted the circumstances in the case before it with the facts presented in Johnson and observed:

> In Johnson, the prisoner had been led to believe through eight successive administrative reviews, that he was to be eligible for parole at the time that he was released. His expectations were created and heightened by this process. No such expectation was built up in Green by the simple failure to place a detainer on him. Nor did the government so mislead Green that it would be improper to charge him with constructive knowledge that he still had time to

7

> serve. See Johnson v. Williford, 682 F.2d at 872. Green therefore fails to meet the second and third elements required to give rise to an estoppel.

Id.

Finally, in United States v. Martinez, the petitioner had been convicted of obstruction of justice and was sentenced to four years in federal prison but remained free on bail pending his appeal. 837 F.2d at 862. His judgment of conviction was affirmed, the Supreme Court denied certiorari and the District Court thereafter spread upon the record the mandate. Id. However, although his counsel was present at the spread of the mandate, petitioner Martinez was not. Id. Moreover, although his bail was thereafter exonerated, petitioner Martinez was never ordered to surrender to prison authorities to begin serving his sentence. Id. at 862-63. Over seven years later, the FBI discovered that petitioner Martinez had never served his sentence. Thereafter, the government filed a motion with the District Court seeking an order requiring Martinez to begin service of his sentence. Id. at 863. Throughout the seven and one-half years between his conviction and his eventual incarceration, petitioner Martinez "made no attempt to conceal his identity or to flee," he lived at the same address for twenty-one years, and he continued to work at the same job. Id. Nonetheless, the Ninth Circuit rejected his claim that his incarceration after such a delay violated the Due Process Clause. Id. at 865.

In so holding, the Ninth Circuit noted both that the government's conduct "must be more than mere negligence" in order to entitle a petitioner to relief in such cases and that "[m]ere unexplained delay does not show misconduct." Id. (quoting Jaa v. United States I.N.S., 779 F.2d 569, 572 (9th Cir. 1986)). See also Camper v. Norris, 36 F.3d 782, 784 (8th Cir. 1994) ("The habeas petitioner shoulders the heavy burden of establishing that the state's action was so affirmatively wrong or its inaction was so grossly negligent that requiring him to serve his sentence would be unequivocally inconsistent with "'fundamental principals of liberty and justice.'") After examining the totality of the circumstances, the court in Martinez concluded that the government's error in failing to order the execution of the petitioner's sentence did not constitute "action so affirmatively wrong or inaction so grossly negligent that fundamental fairness is violated." 837 F.2d at 865. Of particular significance to the present case, in reaching

this conclusion the court specifically noted that petitioner Martinez had testified that "he knew a mistake had been made." Id.

Examining all of the circumstances surrounding the delay in the execution of petitioner's federal sentence in this case, the court concludes that under either the waiver or estoppel theories the government's actions here did not violate the Due Process Clause. Applying the waiver test, it is the case that petitioner has satisfied the first two requirements. Specifically, petitioner's mistaken release was not attributable to his own actions, and the failure of the authorities to re-incarcerate him for nearly ten years, including over the eighteen months after they knew he had been released from local custody in error, amounted to more than simple neglect. However, the situation brought about by petitioner's erroneous release from local custody and subsequent re-incarceration to serve the sentence imposed in his federal case does not satisfy the third requirement for relief because his re-incarceration cannot be said to be "unequivocally inconsistent with fundamental principles of liberty and justice." Martinez, 837 F.2d at 864. This is not a situation, such as presented in Johnson, where the government repeatedly led the petitioner to believe he had been lawfully released from custody. There is no evidence before this court that authorities gave petitioner any "active misadvice" about the continuing validity of his unserved federal sentence. Even assuming that petitioner was told by authorities in Los Angeles that no federal detainer had been lodged against him, this representation was accurate and certainly not so misleading that "it would be improper to charge [petitioner] with constructive knowledge that he still had time to serve." Green, 732 F.2d at 1399.

Nor is there any evidence before the court that petitioner could have held an honest and sincere belief that he was no longer required to serve the sentence imposed in his federal case. Petitioner had been convicted and sentenced in federal court in Texas to serve 327 months in prison, later reduced to 262 months, and, even with credit for time served and good time credits for the entire time he remained free following his mistaken release from local custody, that federal sentence had still not yet run when he was arrested following a traffic stop. Finally, petitioner has presented no evidence that he was advised by his attorney in his federal case or by anyone else that his federal conviction had been overturned on appeal or otherwise invalidated.

9

Given that the Fifth Circuit Court of Appeals had affirmed petitioner's judgment of conviction on June 21, 2000, it would appear to be highly unlikely that anyone would have made any such representation to him. (ECF No. 72 at 8.) In short, there is nothing before this court that would cause it to doubt that petitioner knew that his release from custody without service of his federal time was anything but a mistake. See Martinez, 837 F.2d at 865; see also Camper, 36 F.3d at 785 ("We conclude that Camper knew that his conviction had been affirmed, and under the terms of his bail bond, he was obligated to turn himself over to the authorities. Thus, Camper must accept at least part of the blame for the delay in the execution of his sentence. This finding is significant because the state does not deny a prisoner due process when the prisoner himself is also responsible for the delay in his incarceration.")

It is true that petitioner was openly at liberty for nearly ten years and apparently comported himself well and without incident during that time. In that respect, petitioner presents a somewhat sympathetic case in attempting to avoid re-incarceration. However, the court cannot find from these sympathetic circumstances that petitioner had any cause to believe he had been properly released from custody without serving his lengthy federal sentence.[6] Cf. Shields v. Beto, 370 F.2d 1003, 1004 (5th Cir. 1967) (finding a violation of due process where Texas re-incarcerated the petitioner 28 years after it had released him on furlough to Louisiana to serve a sentence there, 18 years after Louisiana had paroled him and, in the absence of any detainer filed by Texas, concluding that the lack of interest shown by Texas over that lengthy period of time was equivalent to a pardon or commutation of his Texas sentence).

For the same reasons, the court finds that petitioner has failed to satisfy the second and third prongs of the estoppel test. Specifically, petitioner has failed to demonstrate that the actions taken by the government created any reasonable belief on his part that he had been properly released. Nor can the court find under these circumstances that petitioner was ignorant of the fact that his federal criminal sentence was still valid. Petitioner has now received credit against his

---

[6] The question presented in this habeas proceeding is, of course, whether under the circumstances presented petitioner's constitutional right to substantive due process was violated by his re-incarceration and not whether the exercise of any available discretion by the sentencing court could be appropriate given those circumstances.

sentence for all of this time spent at liberty including good time.  Under these circumstances, the execution of petitioner's federal sentence is not so "affirmatively wrong" that "fundamental fairness is violated."  Martinez, 837 F.2d at 865.  Likewise, petitioner's re-incarceration cannot be said to be "unequivocally inconsistent with fundamental principles of liberty and justice."  Id. at 864. (quoting Green, 732 F.2d at 1399).[7]

Accordingly, when considered under either the waiver or estoppel theory, petitioner is not entitled to habeas relief with respect to his claim that his re-incarceration violates his due process rights.

### 2. Conscience Shocking Test

Respondent argues that petitioner's due process claim must be rejected instead under the test set forth by the Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833 (1998).  In Lewis, the parents of a motorcycle passenger killed in a high-speed police chase brought a civil rights action, claiming that the actions of the police violated the passenger's substantive due process right to life.  The Supreme Court held that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  Lewis, 523 U.S. at 847 (quoting Collins v.

---

[7] Petitioner argues that his situation is similar to that posed in Shelton v. Ciccone, 578 F.2d 1241 (8th Cir. 1978).  There, the petitioner claimed the government had waived jurisdiction over him where his judgment and commitment forms "lay unexecuted in the hands of the Marshals for over seven years."  578 F.2d at 1244.  Shelton alleged that the agents who had prosecuted him on federal charges saw him throughout his time at liberty and that his mother had inquired with local police and was told that there was no federal warrant for his arrest.  Id. at 1245.  The Eighth Circuit concluded that these allegations permitted "an inference that although aware of Shelton's whereabouts, the Marshals purposely or out of extreme neglect did not attempt to execute the judgment and commitment papers for seven years."  Id.  The court found that the allegations also suggested that U.S. Marshals chose to arrest Shelton when they did only because his presence became necessary in a civil action that had been filed.  Id.  Under these circumstances, the Eighth Circuit held that "[s]uch inferences, if proven to be true, constitute gross negligence or an arbitrary and unwarranted exercise of their powers by the U.S. Marshals."  Id.  Accordingly, the court remanded the matter for evidentiary hearing.  This court agrees with petitioner to the extent he suggests that the government's inaction in his case is somewhat similar to the extreme neglect shown by federal law enforcement officials in Shelton.  However, here petitioner does not contend that he was arrested following a lengthy delay for purposes of furthering the government's interest in other litigation.  On that basis alone, Shelton is distinguishable from this case.

1  Harker Heights, 503 U.S. 115, 128 (1992)).  The court noted that, historically, only governmental

2  conduct "intended to injure in some way unjustifiable by any government interest is the sort of

3  official action most likely to rise to the conscience-shocking level."  Id. at 849.  However, the

4  Supreme Court suggested that a substantive due process violation may also result from "less than

5  intentional conduct, such as recklessness or 'gross negligence.'"  Id. (quoting Daniels v.

6  Williams, 474 U.S. 327, 334 n.3 (1986)).  The court cited, as an example of such conduct, "claims

7  based on the medical needs of someone jailed while awaiting trial."  Id. at 850.  The Supreme

8  Court also advised as follows:

> Rules of due process are not, however, subject to mechanical application in unfamiliar territory.  Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

13  Id. at 850.

14  Several courts have applied the "conscience-shocking" test expounded by the Supreme

15  Court in Lewis in cases involving re-incarceration of prisoners after their erroneous release from

16  custody.  For instance, in Bonebrake v. Norris, 417 F.3d 938, 942-43 (8th Cir. 2005), the court

17  found no due process violation resulting from a four-year delay in incarcerating the defendant

18  after a state appellate court had affirmed her conviction, even though law enforcement took no

19  steps to take the defendant into custody and she was not in hiding during the period of time she

20  remained free following the affirmance of her conviction.  The court noted there was no showing

21  that law enforcement "purposely or out of extreme neglect" refused to arrest the petitioner during

22  the four-year period she remained at liberty, or that she was ultimately arrested at "a propitious

23  time to serve the interests of law enforcement."  Bonebrake, 417 F.3d at 944.  Citing the Supreme

24  Court's decision in Lewis, the Eighth Circuit concluded that in order to find that due process had

25  been violated under such circumstances, "we would have to see . . . 'a mindless abuse of power,'

26  or a deliberate exercise of power 'as an instrument of oppression,' or power exercised 'without

27  any reasonable justification in the service of a legitimate governmental objective,' before delayed

28  incarceration would shock the conscience."  Id. at 943 (citations omitted) .

1      Likewise, the Fourth Circuit has opined that "courts now considering any claim of
2 substantive due process violation must look for principal guidance to the Supreme Court's most
3 recent deliverances on the concept in [Lewis]." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir.
4 1999) (en banc). In Hawkins, the petitioner had been sentenced to state prison and was thereafter
5 mistakenly released on parole after serving eleven and a half years even though he was not
6 eligible for parole at that time. Twenty months after petitioner Hawkins' release from custody,
7 during which time he held steady employment and received good performance reviews, state
8 correctional authorities noticed the error, revoked his parole, and arrested and re-incarcerated
9 him. Id. at 750. The Fourth Circuit found that these actions by the state did not meet the
10 threshold "shock the conscience" test and were not, therefore, the kind of executive conduct that
11 would support a substantive due process claim. Id. at 746 and 750.

12     In Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2009), the petitioner was re-incarcerated
13 after being inadvertently released prior to the expiration of his state prison sentence and sought
14 credit against his sentence for his time mistakenly spent at liberty. Although the court denied the
15 relief sought in that case, it noted that "[t]he substantive component of the Due Process Clause is
16 violated by executive action "when it 'can properly be characterized as arbitrary, or conscience
17 shocking, in a constitutional sense.'" Espinoza, 558 F.3d at 87. See also Vega v. United States,
18 493 F.3d 310, 316-17 (3d Cir. 2007) (noting that several other circuit courts have concluded that
19 "a relatively high degree of culpability is required to shock the conscience in th[e] context of
20 delayed execution [of a sentence].") (citing Bonebrake, 417 F.3d at 943 and Hawkins, 195 F.3d at
21 742).

22     Petitioner argues that the Lewis decision is not on all fours with the facts of his case and
23 that out-of-Circuit authority applying the holding of Lewis in this context are not binding on this
24 court. (ECF No. 72 at 16-18.) Petitioner also argues, in the alternative, that the government
25 conduct in this case satisfies the Lewis test because the government's gross negligence, as well as
26 the impact of its negligence on petitioner and his family, shocks the conscience. (Id.)

27     If the pending due process claim for habeas relief is not properly analyzed under the
28 waiver and estoppel theories addressed above but instead under a "conscience-shocking" test, this

13

court concludes that the reasoning in Lewis would inform the analysis of petitioner's claim here. In Lewis, the United States Supreme Court held that substantive due process is violated only by governmental conduct that is "arbitrary, or conscience shocking, in a constitutional sense." Lewis, 523 U.S. at 847. If that is the applicable test here, petitioner is not entitled to habeas relief.

Although clearly negligent, the government's belated arrest of petitioner to serve a valid sentence was not "without any reasonable justification" or an abuse of power employed as an "instrument of oppression." Id. at 846 (citations omitted). Nor does the government's conduct in this case offend the "decencies of civilized conduct," or violate "ideas of fair play and decency." Id. (citations omitted). Essentially what happened here is that the government "dropped the ball" and failed to follow up on its responsibility to ensure that petitioner served his federal sentence after Los Angeles County authorities declined to pursue their prosecution of petitioner on state charges. While negligent and unprofessional, such government conduct simply cannot be said to shock the conscience "in a constitutional sense." Id. at 847.

The court is not unmindful of the fact that the government's actions in this case had a severe and negative impact on petitioner. During his ten years at liberty petitioner apparently exhibited exemplary conduct, married the mother of his children, obtained steady employment and paid his taxes. His re-incarceration after such a long period of time as a productive member of society seriously disrupted petitioner's life and the life of all his family members who were, of course, themselves innocent of any wrongdoing. In particular, the fact that law enforcement authorities took no action to re-arrest petitioner between July 27, 2007, when the warrant for his arrest was issued by the U.S. District Court for the Northern District of Texas, and his eventual arrest following a routine traffic stop in January, 2009, despite the fact that they were in possession of all of his current contact information, is almost impossible to understand.

Nevertheless, for the reasons set forth above petitioner has failed to meet the stringent legal requirements under the "conscience-shocking" test necessary to demonstrate a violation of his right to substantive due process. Accordingly, he is not entitled to habeas relief with respect

/////

to his due process claim regardless of whether that claim is analyzed under the waiver or estoppel theories or the "conscience-shocking" test.

### C. Petitioner's Claim for Sentence Credits

Petitioner also requests the award of time credits against his federal sentence for both the time he spent at liberty as well as good time for that period. See Clark v. Floyd, 80 F.3d 371, 374 (9th Cir. 1996); Green, 732 F.3d at 1399-1400; Smith v. Swope, 91 F.2d 260, 262 (9th Cir. 1937). As noted above, the court has been advised by counsel that petitioner has received all of those requested time credits and his anticipated release date has been adjusted accordingly. Because petitioner has obtained the relief he is requesting in the form of sentence credits, this aspect of his claim has been rendered moot. See Kittel v. Thomas, 620 F.3d 949, 951–52 (9th Cir. 2010) (habeas petition properly dismissed as moot where there was no legal issue remaining for the court to decide); United States v. Brandau, 578 F.3d 1064, 1067 (9th Cir. 2009) ("Where the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed.") (quoting Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th Cir. 2002)).

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.

2. Petitioner's request for the award of time credits against his sentence is found to have been rendered moot by the award of the time credits sought.

Dated: May 6, 2014

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
Mcphearson1889.2241.hc